## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

JANE DOE,

        Plaintiff,

v.

BOARD OF SUPERVISORS OF THE
UNIVERSITY OF LOUISIANA SYSTEM,
et al

        Defendants.

No. 3:22-cv-00338-BAJ-SDJ

Hon. Brian A. Jackson
Hon. Scott D. Johnson

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT LAFAYETTE
CITY-PARISH CONSOLIDATED GOVERNMENT'S MOTION TO COMPEL**

---

Plaintiff Jane Doe, by and through her undersigned attorneys, respectfully submits this

Memorandum in Opposition to Defendant Lafayette City-Parish Consolidated Government's

"Motion to Compel Evasive or Incomplete Responses to LCG's Second Request for Production

of Documents and to Compel Supplemental Deposition of Plaintiff." (Doc. 111.)

## INTRODUCTION

Defendants Lafayette City-Parish Consolidated Government ("LCG") and Board of

Supervisors of the University of Louisiana System ("ULS") chose to depose Ms. Doe early in the

discovery process. It was only *after* Ms. Doe's seven-hour deposition that Defendants requested

her communications with long-identified fact witnesses and sought depositions and documents

from those witnesses. Defendants could have conducted that discovery prior to deposing

Plaintiff, but they did not. LCG's motion to compel is based entirely on this discovery that

Defendants, following their own discovery strategies, engaged in after Ms. Doe's deposition.

Defendants should not be permitted another bite at the apple to burden and oppress Ms. Doe with

a second deposition and additional discovery, which is precisely what LCG's motion requests.

1

## BACKGROUND

On May 25, 2022, Ms. Doe filed her Complaint, asserting a Title IX claim against ULS and negligence claims against ULS and LCG. (R. Doc. 1.) Plaintiff's lawsuit is based on Defendants' institutional failures that permitted Victor Daniel Silva ("Silva"), a reported sexual predator, to transfer between schools, attend Louisiana Tech, rape Ms. Doe, and then escape investigation or consequence, even though he remained under ULS's control and top school officials received additional reports of his serial predation against women.

Plaintiff has conducted and cooperated in extensive discovery. On August 25, 2022, she served Rule 26(a)(1) Disclosures that identified Reverend Ryan Ford, Kaiti Lammert, Kenny Jacoby, Andie Richard, and other witnesses.[1] A year later, Defendants propounded their first discovery requests on Plaintiff.[2] None of Defendants' discovery requested Ms. Doe's communications with Ford, Lammert, Jacoby, or Richard. Plaintiff timely and fully responded to the requests.

On September 20, 2023, Defendants deposed Ms. Doe for the maximum time allowed by the Federal Rules of Civil Procedure. As evidenced in the resulting 329-page deposition transcript, defense counsel extensively examined Plaintiff on, *inter alia*, intimate details of the rape she suffered; communications with Reverend Ford, Ms. Lammert, and others in the aftermath of the rape; reporting Silva to ULS and law enforcement; communication with investigative journalist Mr. Jacoby, who interviewed Ms. Doe for his USA Today article; contact with Ms. Richard and other survivors of Silva's sexual misconduct; and her counseling,

---

[1] Reverend Ford, Ms. Lammert, and Mr. Jacoby were also identified in Plaintiff's Complaint. (R. Doc. at 4 ¶ 10; 17 ¶¶ 100, 103, 106; 18 ¶¶ 108-09, 113.)
[2] ULS and LCG separately issued interrogatories and document requests to Plaintiff on June 7 and July 26, 2023, respectively.

treatment, and medical history.

　　After deposing Ms. Doe, Defendants ULS and LCG – on September 25 and October 9, 2023, respectively – propounded additional requests for production that, for the first time, requested Plaintiff's communications with Ms. Richard, Ms. Lammert, and Mr. Jacoby.

　　On October 30, 2023, Ms. Doe provided responses and objections to ULS's requests. Plaintiff's counsel met and conferred with ULS counsel on several of the document requests to which Plaintiff objected, and on November 6, 2023 Ms. Doe produced her communications with Ms. Richard, Mr. Jacoby, and Ms. Lammert. On November 17, 2023, Defendants deposed Ms. Richard.[3]

　　LCG's second set of document requests required Ms. Doe to respond after the then-established discovery deadline, and pursuant to Local Civil Rule 26(d)(2) she was not obligated to provide responses. However, the Court ordered an extension of the fact discovery cut-off, and on November 18, 2023, Ms. Doe provided written responses and a small document production.

　　To date, Ms. Doe has responded to 64 documents requests and answered 23 interrogatories.  After Ms. Doe's deposition, 23 individuals, including Reverend Ford, Ms. Lammert, and Ms. Richard, were deposed in connection with this litigation, and deposition transcripts now total approximately 2,185 pages. The discovery cut-off date has been extended three times, twice at Defendants' request and primarily so they could conduct third-party discovery. (*See* R. Doc. 75, 78, 79, 90, 104, 109, 112.)

---

[3] On November 14, 2023, ULS issued a subpoena to Ms. Richard for her communications with Plaintiff, to be produced after her deposition, on December 6, 2023.

## ARGUMENT

I.  **LCG's Motion to Compel Responses to Its Document Requests Should Be Denied**

A.  **Legal Standard**

The Federal Rules of Civil Procedure establish the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Significantly, the objective of Rule 26 is "to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." Fed. R. Civ. P. 26 advisory committee's note to 1983 amendment. The Rule "also seeks to reduce repetitiveness and to oblige lawyers to think through their discovery activities in advance so that full utilization is made of each deposition, document request, or set of interrogatories." *Id*.

The Court must limit discovery if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

A request for documents must "describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). The respondent must "state that inspection and related activities will be permitted as requested or state with specificity the grounds for objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). "'[A]

4

party served with written discovery must fully answer each interrogatory or document request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld.'" *Humphrey v. Leblanc*, No. 20-233-JWD-SDJ, 2021 U.S. Dist. LEXIS 151129, at *4-5 (M.D. La. Aug. 11, 2021) (quoting *Lopez v. Don Herring Ltd.*, 327 F.RD. 567, 580 (N.D. Tex. 2018) (internal quotations and citation omitted)).

A party moving to compel "'bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence.'" *Id.* at *5 (quoting *Tingle v. Hebert*, No. 15-626-JWD-EWD, 2016 U.S. Dist. LEXIS 172550, at *4 (M.D. La. Dec. 14, 2016) (quotation omitted)). If the movant meets its burden, then the opposing party must "show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted." *Id.*

**B.**     **Ms. Doe Fully Responded to LCG's Second Document Requests**

Plaintiff sets forth below LCG's requests and her responses and objections, quoted verbatim, as required by Local Civil Rule 37.

LCG's Request for Production No. 1:

Please produce any evidence stored on any Apple devices, including but not limited to iPads, Macs, and iPhones, which were logged in to Plaintiff's iCloud and/or iMessage account for any dates spanning from September 2018 to the present, which regard iMessages and other communications between Plaintiff and:
- Kenny Jacoby;
- Andie Richard;
- Kayla Alvarez;
- Kaiti Lammert;
- Victor Daniel Silva

5

_Plaintiff's Response to Request for Production No. 1:_

Plaintiff objects to Request for Production No. 1 as vague on the basis that it requests "**any evidence** stored on any Apple devices . . . which **regard** iMessages and other communications," as it is unclear what "evidence" would "regard" messaging and communications in the context described, other than such messaging and communications themselves. Plaintiff also objects to this request on the basis that it is unduly burdensome, overly broad, and seeks information that is not proportional to the needs of the case and is not relevant to any party's claim or defense because it requests "any evidence" and all messaging and communications regardless of subject, topic, or relevance to this lawsuit. In addition, Ms. Doe objects to this request on the basis that it is cumulative, as she has already produced responsive documents in her possession, control, or custody. _See_ PL-000011-17, 112-32. Subject to and without waiving the foregoing objections, Plaintiff produces documents. _See_ PL-000133-34.

LCG's Request for Production No. 2:

Please produce any evidence stored on any non-Apple devices, such as those utilizing an Android operating system, including but not limited to tablets and laptops that were logged in to Plaintiff's Messages account for any dates spanning from September 2018 to the present, which regard messages and other communications between Plaintiff and:

- Kenny Jacoby;
- Andie Richard;
- Kayla Alvarez;
- Kaiti Lammert;
- Victor Daniel Silva

_Plaintiff's Response to Request for Production No. 2:_

Plaintiff objects to Request for Production No. 2 as vague on the basis that it requests "**any evidence** stored on any non-Apple devices . . . which **regard** messages and other communications," as it is unclear what "evidence" would "regard" messaging and communications in the context described, other than such messaging and communications themselves. Plaintiff also objects to this request on the basis that it is unduly burdensome, overly broad, and seeks information that is not proportional to the needs of the case and is not relevant to any party's claim or defense because it requests "any evidence" and messaging and communications regardless of subject, topic, or relevance to this lawsuit. In addition, Ms. Doe objects to this request on the basis that it is cumulative, as she has already produced responsive documents in her possession, control, or custody. _See_ PL-000011-17, 112-32. Subject to and without waiving the foregoing objections, Plaintiff produces documents. _See_ PL-000133-34.

<u>LCG's Request for Production No. 3:</u>

Please produce any evidence stored on any Apple devices, including but not limited to iPads, Macs, and iPhones, which were logged in to Plaintiff's iCloud and/or iMessage account for any dates spanning from September 2018 to the present, which regard iMessages and other communications regarding the sexual assault forming the basis of this lawsuit and/or Lafayette Consolidated Government or Lafayette Police Department between Plaintiff and:

- All individuals included in the photography project group chat, as identified in Jane Doe's deposition testimony;
- All individuals included in the group chat of victims Victor Daniel Silva, as identified in Jane Doe's deposition testimony;
- Sarah Lawler, Jane Doe's roommate at Indiana University;
- Rob and Nancy Pierce of Ruston, Louisiana, with whom Jane Doe lived while attending Louisiana Tech University ("La. Tech" or "Tech");
- Connor Hardipe, former boyfriend or friend of Jane Doe, as testified to in Jane Doe's deposition;
- Nathan Kurtz, former boyfriend or romantic partner of Jane Doe, as testified to in Jane Doe's deposition;
- Katelyn Fajardo, Jane Doe's friend at La. Tech, as testified to by Jane Doe in her deposition;
- Hanna Aycock, Jane Doe's acquaintance through the Wesley Foundation at La. Tech, as testified to by Jane Doe in her deposition;
- Khalilah Kearsy, Jane Doe's acquaintance who accompanied her to the Lincoln Parish Health Unit, as testified to by Jane Doe in her deposition;
- Gabrielle, Jane Doe's "friend of a friend" and as identified in the Ruston Police Department report, as testified to by Jane Doe in her deposition.

<u>*Plaintiff's Response to Request for Production No. 3:*</u>

Plaintiff objects to Request for Production No. 3 as vague on the basis that it requests "**any evidence** stored on any Apple devices . . . which **regard** iMessages and other communications," as it is unclear what "evidence" would "regard" messaging and communications in the context described, other than such messaging and communications themselves. Subject to and without waiving the foregoing objections, Plaintiff produces responsive communications from the "group chat of victims of Victor Daniel Silva," bearing the bates stamps PL-000135-43. The messaging provided shows dates for the produced responsive communications and has been redacted to protect the identity of sexual assault victims, information that is not responsive to this Request for Production, and highly sensitive information. Plaintiff did not post any communications in the group chat that are responsive to this Request.

<u>LCG's Request for Production No. 4:</u>

Please produce any evidence stored on any non-Apple devices, such as those utilizing an Android operating system, including but not limited to tablets and laptops that were logged in to Plaintiff's Messages account for any dates spanning from September 2018 to the present, which regard Messages and other communications regarding the sexual assault forming the basis of this lawsuit and/or Lafayette Consolidated Government or Lafayette Police Department between Plaintiff and:

- All individuals included in the photography project group chat, as identified in Jane Doe's deposition testimony;
- All individuals included in the group chat of victims Victor Daniel Silva, as identified in Jane Doe's deposition testimony;
- Sarah Lawler, Jane Doe's roommate at Indiana University;
- Rob and Nancy Pierce of Ruston, Louisiana, with whom Jane Doe lived while attending Louisiana Tech University ("La. Tech" or "Tech");
- Connor Hardipe, former boyfriend or friend of Jane Doe, as testified to in Jane Doe's deposition;
- Nathan Kurtz, former boyfriend or romantic partner of Jane Doe, as testified to in Jane Doe's deposition;
- Katelyn Fajardo, Jane Doe's friend at La. Tech, as testified to by Jane Doe in her deposition;
- Hanna Aycock, Jane Doe's acquaintance through the Wesley Foundation at La. Tech, as testified to by Jane Doe in her deposition;
- Khalilah Kearsy, Jane Doe's acquaintance who accompanied her to the Lincoln Parish Health Unit, as testified to by Jane Doe in her deposition;
- Gabrielle, Jane Doe's "friend of a friend" and as identified in the Ruston Police Department report, as testified to by Jane Doe in her deposition.

<u>*Plaintiff's Response to Request for Production No. 4:*</u>

Plaintiff objects to Request for Production No. 4 as vague on the basis that it requests "**any evidence** stored on any non-Apple devices . . . which **regard** messages and other communications," as it is unclear what "evidence" would "regard" messaging and communications in the context described, other than such messaging and communications themselves. Subject to and without waiving the foregoing objections, Plaintiff produces responsive documents from the "group chat of victims of Victor Daniel Silva," bearing the bates stamps bearing the bates stamps PL-000135-43. The messaging provided shows dates for the produced responsive communications and has been redacted to protect the identity of sexual assault victims, information that is not responsive to this Request for Production, and highly sensitive information. Plaintiff did not post any communications in the group chat that are responsive to this Request.

(emphasis in original).

8

Ms. Doe also produced 10 pages of documents consisting of a message from Mr. Jacoby (Doc. 111-6 at 10 (PL-000133)); Mr. Jacoby's written communication to Ms. Doe requesting her availability for a phone call (*Id.* at 11 (PL-000134)); and responsive messaging and communications from the group chat of Silva's victims."[4] (*Id.* at 12-20 (PL-000135-43)).

**C.    LCG Continued Requesting Information from Ms. Doe**

Ms. Doe testified during her deposition that she received a new phone as a gift from her parents when she graduated from Tech, she did not have access to text messages from her previous phone, both phones were Apples, and she obtained an iCloud storage subscription when she received her new phone in 2020. (Ex. 1 (Doe Dep.) at 109, 122, 322.) Defendants could have, but did not, ask if she had other electronic devices.

On November 29, 2023, Plaintiff's counsel spoke with LCG's counsel, who stated he had "some questions regarding these responses." (R. Doc. 111-10 at 2.) Plaintiff's counsel informed defense counsel that Ms. Doe had searched her electronic devices and the iCloud for documents, and Plaintiff had produced all documents she found that were responsive to LCG's requests. When questioned about the redactions from the group chat, Plaintiff's counsel reiterated that the chat consisted of communications between sexual assault survivors, some who she understood likely were plaintiffs in a lawsuit pending in the U.S. District Court for the Western District of Louisiana, and the document had been redacted to protect the victims' identities and sensitive information that was not responsive to LCG's requests.

---

[4] At that time, Plaintiff's counsel was fully engaged in pre-trial briefing for a trial set to begin in January 2024. (Doc. 111-11 at 1.) She intended to provide responses to LCG's document requests on Friday, November 17. However, the deposition that Defendants scheduled for that afternoon went far longer than Plaintiff's counsel anticipated, and she provided the responses to Defendants the very next day, on Saturday, November 18, 2023.

During the call, Plaintiff's counsel stated she would attempt to answer LCG's questions whether PL-000133 and PL-000134 were screenshots, and if so what they captured (i.e. an email, text message, or other social media messaging or chat); from whom and when the group chat messaging produced at PL-000135-53 was obtained by Ms. Doe; whether Plaintiff had Apple devices other than her iPhone; and whether she searched them for documents responsive to LCG's requestions (even though Plaintiff's counsel had already informed defense counsel that Ms. Doe had searched her devices and the iCloud and produced documents responsive to LCG's requests).

It immediately became clear LCG would not limit its inquiries to those issues. In a November 29, 2023 email sent to Plaintiff's counsel after the phone call, LCG requested that Ms. Doe respond to many other questions. (*Id.* at 2-3.) Plaintiff's counsel reminded defense counsel she had agreed to look into his questions, posed to Ms. Doe *outside* of formal discovery, as a courtesy to LCG, and did not agree to answer any other questions. (*Id.* at 1.) LCG's counsel responded "he did not see the big deal in providing answers" to his questions and stated Plaintiff's counsel should email LCG's questions to Ms. Doe, who should then provide answers to defense counsel's written questions. (*Id.* at 1.)  In essence, LCG sought answers from Ms. Doe to interrogatories that LCG never propounded.

### D.    LCG's Arguments are Futile

LCG does not, and cannot, contend that Ms. Doe did not respond to its document requests. Instead, it argues that Ms. Doe's responses are incomplete or evasive because she "did not provide any description or context" concerning the documents she produced in response to LCG's requests. (Doc. 111-1 at 12.) This is untrue. Ms. Doe, in her written responses to the requests, identified by bates number the documents she was producing in response to each of

LCG's requests, which placed them in "context." Moreover, it is plain from the documents themselves what they are – communications from Mr. Jacoby and messaging between members of the group chat. Ms. Doe was not obligated by the Federal Rules, Local Rules, or any other authority of which she is aware to provide "description or context" in her written responses beyond what she has already provided.

LCG also argues that Ms. Doe's responses were incomplete because she should have provided written answers to LCG's ever-expanding litany of questions posed outside of the formal discovery process, some raised for the first time in LCG's Motion, regarding her search for documents, identification of each of her electronic devices, whether the documents she produced are available in their native format, and the nature and content of each document produced. This too is unavailing. As an initial matter, LCG could have requested and obtained these documents early in discovery, prior to deposing Ms. Doe, and then asked her questions about the documents during her deposition, but it chose not to. LCG at the very least could have asked Ms. Doe during her deposition to identify her electronic devices and how she had searched for relevant documents already produced to Defendants, but it did not. LCG also could have issued interrogatories on these topics, including interrogatories propounded in tandem with its second set of document requests asking for additional information on the documents produced, but it opted not to. Moreover, while LCG insists it is entitled to know whether the documents produced by Ms. Doe are available in their native format, *LCG did not request that Plaintiff produce documents in their native format.* Additionally, Plaintiff's counsel already informed LCG that Ms. Doe searched her electronic devices and the iCloud for documents and produced those that were responsive to LCG's requests. LCG cannot explain the significance or relevance of its demand that at this late date Ms. Doe should be compelled to respond to discovery that was

never propounded on her or that she has already disclosed to LCG.

LCG's Motion is also based on an egregious misrepresentation concerning Ms. Doe's production of her communications with Ms. Richard. LCG states, "[n]o messages between plaintiff and [Ms. Richard] were provided by plaintiff's counsel before [Ms. Richard's] deposition, and at the time the deposition was taken, defense counsel had no idea whether any such messages even existed." (R. Doc. 111 at 3.) This is patently false. On November 6, 2023, well over a week prior to Ms. Richard's deposition, Ms. Doe produced to Defendants her communications with Ms. Richard, bearing the bates stamps PL-000112-19.

With respect to LCG's suppositions concerning Mr. Jacoby's written communication to Ms. Doe requesting her availability for a phone call, at PL-000134 (Doc. 111-1 at 14), Mr. Jacoby has already provided the answers. He stated in a sworn Declaration that his first written communication to Ms. Doe was a December 9, 2020 email, his initial phone call with her took place on December 10, 2020, and his first text message exchange with her occurred that same day after the call. (Ex. 2 (Jacoby Decl.) ¶ 3.) Thus, it is obvious this document is Mr. Jacoby's December 9, 2020 email to Ms. Doe.

With respect to the document LCG refers to as "Exhibit F," consisting of the Silva survivor group chat found at PL-000135-43, LCG contends it "has the right to know how plaintiff all of a sudden came into possession of these records, which forms part of the subjects defendant seeks to question plaintiff on during a supplemental deposition." (Doc. 111-1.) LCG ignores the fact that Defendants had not previously requested these documents from Ms. Doe, and she produced them for the first time in response to LCG's second set of document requests. Moreover, as Ms. Doe has testified and established by documents produced by Ms. Richard, Plaintiff was admitted to that group chat after Mr. Jacoby's article was published. It should come

as no surprise to Defendants that, before Ms. Doe left the group chat, she was able to screenshot and save the messaging. Ms. Doe produced exactly what LCG requested – "communications regarding the sexual assault forming the basis of this lawsuit and/or Lafayette Consolidated Government or Lafayette Police Department." As Ms. Doe informed Defendants, she did not post any information concerning LCG, the Lafayette Police Department, or Silva's rape of her. She produced the posts that did contain the requested information, with enough context to show the dates on which they were posted.  At no point prior to LCG's Motion did it request that Ms. Doe provide a "privilege log" for unresponsive and highly sensitive information posted by sexual assault victims that was redacted from the document. Should this Court wish to view the posts *in camera*, Ms. Doe will provide them for inspection.

Accordingly, LCG has failed to meet its burden on its motion to compel Plaintiff's responses to its document requests and its motion should be denied, as should LCG's request for attorney fees. Moreover, this Court has previously ruled that attorney fees are available only where a party completely fails to serve any response to discovery, which is certainly not the case here. *See Nguyen v. La. State Bd. of Cosmetology*, No. 14-80-BAJ-RLB, 2016 U.S. Dist. LEXIS 413, at *17-18 (M.D. La. Jan. 5, 2016).

## II.    LCG's Motion to Compel Ms. Doe to Appear for Another Deposition Should Be Denied In Its Entirety

Ms. Doe incorporates herein the background and argument from her Motion for a Protective Order Barring Defendants from Deposing Her a Second Time. (R. Doc. 107.) On January 4, 2024, the day before Ms. Doe's response to LCG's Motion to Compel was due, Defendants for the first time provided specific topics on which they contend they are entitled to a second deposition of Plaintiff, which they agreed to limit to two hours. However, as set forth below, Ms. Doe has already offered extensive testimony on these topics; Defendants had ample

opportunity to obtain additional discovery on these issues from Plaintiff and other witnesses; and the burden, cost, and oppression to Plaintiff in having to testify at another deposition, particularly after she already underwent a seven-hour examination, far outweighs any purported benefit of the discovery. Accordingly, LCG's motion should be denied.

A.   **Topic 1 – Communications with Mr. Jacoby**

Defendants seek to compel Ms. Doe to appear for a second deposition on "[t]he dates, times and content of each communication between Plaintiff and Jacoby, including a discussion of the messages produced by Plaintiff in discovery and the content of all verbal communications," and "[w]hat Jacoby told Plaintiff about his article, including information that he learned and shared with her."

Ms. Doe testified at length during her deposition on her communications, verbal and written, with Mr. Jacoby. (Ex. 1 (Doe Dep.) at 91-99, 308-313, 324-25.) As the U.S. District Court for the Eastern District of California determined in its recent Order granting Mr. Jacoby's motion to quash ULS's subpoena duces tecum for his notes and records:

> Jane Doe has already testified extensively about the substance of her communications with Jacoby. Jane Doe has already confirmed that she did not see the article before it was published. Jane Doe has already testified as to what facts she first learned when reading the Article after its publication. . . The documents and testimony ULS has obtained in discovery thus far all confirm what Jane Doe alleged in her Complaint – that she learned the basis of her claims reading the Article.

(Ex. 3 (*Jacoby v. Bd. of Supervisors of the Univ. of La. Sys.*, No. 2:23-mc-00403-KJM-AC, at 5 (E.D. Cal. Dec. 21, 2023) (citations omitted)). Also, Mr. Jacoby stated in a sworn Declaration that his first written communication to Ms. Doe was a December 9, 2020 email, his initial phone call with her took place on December 10, 2020, and his first text message exchange with her occurred that same day after the call. (Ex. 2 (Jacoby Decl.) ¶ 3.) Accordingly, Defendants'

motion to compel another deposition of Ms. Doe on these topics should be denied because it would be unreasonably cumulative and duplicative, and Defendants had ample opportunity to obtain this discovery from Plaintiff and third parties. *See* Fed. R. Civ. P. 26(b)(2). Finally, another deposition of Ms. Doe on this topic is outside the scope permitted by Rule 26(b)(1) because it will not resolve any issues in the case and the burden and expense of conducting a second deposition of Plaintiff – after Defendants already deposed her on this same topic – outweighs its likely benefit.

Plaintiff, in the spirit of compromise, is willing to provide a written declaration authenticating her messaging with Mr. Jacoby in lieu of being deposed again on these communications.

### B.    Topic 2 – Text Messages with Reverend Ford

Defendants also seek to re-depose Ms. Doe for "[a] discussion of the text messages between Plaintiff and Ryan Ford." This too should be denied. First, many of those text messages are protected by the clergy privilege. (R. Doc. 110.) Second, with respect to facts contained in otherwise privileged messaging, or communications over which Ms. Doe has not asserted her privilege, a second deposition would be unreasonably cumulative and duplicative. *See* Fed. R. Civ. P. 26(b)(2). Ms. Doe already testified about *facts* she relayed to Reverend Ford, including but not limited to the date when she saw social media concerning Silva, learned his full name, and discovered that he was a serial sex offender, and Ford's guidance and assistance that led to her reporting Silva to ULS and law enforcement. (Ex. 1 (Doe Dep.) at 226-28, 232, 241-45, 247.) Ms. Doe also produced the social media that informed her of Silva's full name and his predatory nature, and Reverend Ford testified extensively about his communications and interactions with Ms. Doe during his deposition.

Ms. Doe, in the spirit of compromise, has offered to stipulate to facts contained in her otherwise privileged communications with Reverend Ford, which is far less burdensome and costly than a second deposition.

**C.      Topic 3 – Communications with and "New" Information from Ms. Richard**

Defendants ask this Court to compel Ms. Doe to appear for a second deposition for "a discussion of the messages and communications exchanged between Plaintiff and Andie Richard, both those produced by Plaintiff and those produced by Andie Richard" and "a discussion of new information learned in the deposition of Andie Richard."

Defendants' request should be denied because a second deposition on these topics would be unreasonably cumulative and duplicative, and Defendants have had ample opportunity to obtain this discovery from Plaintiff and third parties. *See* Fed. R. Civ. P. 26(b)(2). During Ms. Doe's deposition she testified about her communications with Ms. Richard, including the social media platform she used to contact Ms. Richard, the content of her communications with Ms. Richard, and the group chat to which Ms. Doe was added after Mr. Jacoby's article regarding Silva was published. (Ex. 1 (Doe Dep.) at 72-90, 325-27.) Ms. Doe then produced all of her messages to and from Ms. Richard. Defendants subsequently deposed Ms. Richard for approximately three hours and spent most of the deposition questioning her on her communications, relationship, and interactions with Ms. Doe. Indeed, 73 pages of Ms. Richard's 129-page deposition transcript contain testimony on this topic, including *inter alia* the date when she was first contacted by Ms. Doe, the mode of her communications with Ms. Doe, the dates of her messages with Ms. Doe, the Facebook group chat of Silva victims to which Ms. Richard added Ms. Doe after Mr. Jacoby's article was published, the content of that group chat messaging, the content of her messaging with Ms. Doe, and whether she had any knowledge of

Ms. Doe's communication with Mr. Jacoby.

To the extent Defendants contend they are entitled to re-depose Plaintiff on these topics because, prior to Ms. Doe's deposition they did not have her communications with Ms. Richard or what Defendants refer to as "new" information they obtained through Ms. Richard's deposition, this is solely due to Defendants chosen litigation strategy to request this discovery *after* Plaintiffs deposition. Although Ms. Doe disclosed Ms. Richard as a witness on August 25, 2022, and on July 21, 2023 produced in discovery a relevant social media post previously made by Ms. Richard, Defendants decided to wait until after deposing Ms. Doe on September 20, 2023 to request her communications with Ms. Richard or subpoena Ms. Richard for a deposition and documents. Nothing prevented Defendants from (i) obtaining Ms. Doe's communications with Ms. Richard prior to Plaintiff's deposition or (ii) holding Ms. Richard's deposition prior to that of Ms. Doe. Plaintiff should not be required to undergo the cost, burden, and oppression of a second deposition because of Defendants' decisions on how and when to conduct their discovery and utilize their depositions, document requests, interrogatories, and third-party subpoenas. Should Defendants wish to cross-examine Ms. Doe on these topics, they will have the opportunity to do so at trial.

In the interest of avoiding unnecessary dispute on this issue, Ms. Doe offers to provide a written declaration authenticating her messaging with Ms. Richard in lieu of a second deposition on this topic.

D.    **Topic 4 – Ms. Doe's Violence Against Women Statement**

Next up on Defendants' list of re-deposition topics is Plaintiff's statement that was posted on a Violence Against Women site. The piece did not disclose Ms. Doe's name, and it states:

> I think I knew pretty much immediately that it was at least assault. I didn't want to assign the term rape, I didn't feel like I deserved to use the word rape. And I feel

like that was negated to the fact that maybe I put myself in the situation. But I called my friend the day after, and I at least knew that something bad had happened, I felt sick. It wasn't until I talked to someone about it that I knew it was rape. At first I didn't want to. It wasn't until I saw the reports of him sexually assaulting other women. It wasn't until then that I felt validated that I reported it. Especially after seeing the report and seeing how it happened to so many girls in the same way.

Ms. Doe should not be compelled to undergo a second deposition so that Defendants can question her on this statement, as it would be unreasonably cumulative and duplicative. *See* Fed. R. Civ. P. 26(b)(2). Ms. Doe testified extensively during her deposition about the very same issues described in this statement, including her realization that Silva had raped her, her guilt and anguish, and her feeling of validation when she learned that Silva had sexually assaulted and raped other women. (Ex. 1 (Doe Dep.) at 194-95, 198-99, 201, 226-28, 232-33, 241-45.) Nothing in the written statement adds to that information or contradicts Ms. Doe's testimony, and the cost, burden, and oppression to Plaintiff of having to sit for another deposition and be examined on these sensitive and personal topics outweighs any possible benefit.

### E.    Topic 5 – Communications with and "New" Information from Ms. Lammert

Defendants also contend they are entitled to re-depose Plaintiff so that defense counsel may engage in "[a] discussion of the information contained in the messages between Plaintiff and Kaiti Lammert," and "[a] discussion of new information learned in the deposition of Kaiti Lammert." Again, Defendants' motion to compel on this topic should be denied.

Ms. Doe already testified regarding her communications and relationship with Ms. Lammert, and Defendants deposed Ms. Lammert on her communications and relationship with Ms. Doe, during which Ms. Lammert read into the record her text messaging with Plaintiff. As such, any second deposition on these topics would be unreasonably cumulative and duplicative. *See* Fed. R. Civ. P. 26(b)(2). Moreover, information contained in Plaintiff and Ms. Lammert's messaging is not relevant to any party's claim or defense and thus beyond the proper scope of

discovery. *See* Fed. R. Civ. P. 26(b)(1). The text messages all date from *after* Ms. Doe filed her lawsuit. To the extent any of the information is relevant, and Plaintiff strongly contends it is not, a deposition on this topic it is not important to the issues at stake in this action, will not resolve any issues, and the burden and expense of conducting a second deposition outweighs its benefit. *See* Fed. R. Civ. P. 26(b)(1).

Should Defendants contend they are entitled to another deposition of Ms. Doe on these topics because, at the time they deposed Plaintiff they did not have her messaging with Ms. Lammert and did not possess "new" information supposedly obtained through Ms. Lammert's deposition, that is because Defendants chose to wait and request those documents and Ms. Lammert's deposition until after Plaintiff's deposition. Defendants made this decision despite the fact that Plaintiff's Complaint specifically identified Ms. Lammert as a material fact witness and Ms. Doe's Rule 26(a) disclosures did the same. Defendants were perfectly capable of requesting communications between Plaintiff and Ms. Doe, deposing Ms. Lammert, and subpoenaing documents from Ms. Lammert prior to deposing Plaintiff, but they did not. Ms. Doe should not have to suffer cost, burden, and oppression because of Defendants' chosen discovery strategy. If Defendants want to cross-examine Ms. Doe on these topics, they will be able to do that at trial.

F.    **Topic 6 – Records and Testimony from Counselor LaNita Proctor Hicks**

Defendants wish to compel Ms. Doe to testify at a second deposition on "[t]he content of the production (original and supplemental counseling file materials) from LaNita Proctor Hicks and her deposition testimony."

Ms. Doe identified this witness in her Rule 26(a) disclosures and produced records she received from Proctor Hicks to Defendants *prior to her deposition*. Defendants had every opportunity to (i) depose Proctor before deposing Ms. Doe or (ii) question Plaintiff about the

records during her deposition, but they decided not to. Moreover, Ms. Doe already testified during her deposition about counseling with Proctor Hicks, and Defendants deposed Proctor Hicks about her treatment and diagnosis of Ms. Doe and records concerning the same. (Ex. 1 (Doe Dep.) at 282-85, 288-89.) Accordingly, any additional deposition on Topic 6 would be unreasonably cumulative and duplicative, and Defendants have had ample opportunity to obtain discovery on these issues from both Plaintiff and Proctor Hicks. *See* Fed. R. Civ. P. 26(b)(2). Defendants should not be permitted to burden and oppress Ms. Doe with another deposition on this highly sensitive topic simply because they chose not to question her on the records during Plaintiff's deposition and to depose Proctor Hicks after Ms. Doe.

### G.   Topic 7 – Plaintiff's Declaration

Defendants also seek to compel Ms. Doe to appear for another deposition so that they can examine her on "Plaintiff's Declaration attached to her opposition to the motion regarding clergyman privilege."

Ms. Doe stated the following in her sworn Declaration:

1.    I am the Plaintiff in the above-captioned lawsuit.

2.    I am proceeding under the pseudonym Jane Doe in the lawsuit.

3.    While I was a student at Louisiana Tech, Ryan Ford was my minister and pastor.

4.    After Victor Daniel Silva raped me the night of September 18-19, 2018, I disclosed the rape to Ryan and sought consolation and spiritual counseling from him concerning the rape, my feelings and shame about the rape, how I could alleviate these feelings and somehow move forward.

5.    In December 2018, when I learned Silva's true name and that he reportedly had assaulted other women, I continued communicating with Ryan in person and via text messaging to seek consolation, spiritual guidance, and counseling from Ryan regarding the rape, one of the worst and most invasive and painful things that had ever happened to me, and what if anything I could do to alleviate my guilt and feelings of shame, which

included reporting Silva to authorities.

6.     During my communications with Ryan regarding the rape and its aftermath, he prayed for me, and we prayed together.

(R. Doc. 110-3.)

Defendants' motion should be denied because a second deposition of Plaintiff on this Declaration and the information it contains would be unreasonably cumulative and duplicative, and Defendants had ample opportunity to obtain discovery on this topic from Plaintiff and Reverend Ford. *See* Fed. R. Civ. P. 26(b)(2). The Complaint identified Reverend Ford by name, and Plaintiff also identified him as a witness in her Rule 26(a) disclosures. Defendants have long known that Reverend Ford was Ms. Doe's minister, and they had every reason and opportunity to question Ms. Doe and Ford on their relationship and interactions, which they have, in fact, done. Moreover, Ms. Doe's Declaration is fully consistent with and supported by her deposition testimony, Reverend Ford's deposition testimony, the non-privileged messaging between Ms. Doe and Ford, Kaiti Lammert's deposition testimony, and Ms. Doe's contemporaneous written statements. Frankly, it is unclear what Defendants hope to gain by deposing Ms. Doe on the sworn statements made in her Declaration, and any possible benefit of that deposition is significantly outweighed by its burden, cost, and oppression to Plaintiff. *See* Fed. R. Civ. P. 26(b)(1).

### H.     Topic 8 – Documents Produced in Response to LCG's Second Requests for Production

Finally, Defendants seek an order compelling Ms. Doe to sit for another deposition so they can question her on documents produced in response to LCG's Second Document Requests.

Defendants' motion should be denied because a second deposition on this topic would be unreasonably cumulative and duplicative, and Defendants had ample opportunity to obtain

discovery on this topic from Plaintiff and third parties. *See* Fed. R. Civ. P. 26(b)(2). LCG, prior to deposing Ms. Doe, issued just three individual requests for production and three individual interrogatories to Plaintiff. (R. Doc. 89 at 8.) LCG then waited nearly three weeks *after* Plaintiff's deposition to propound its second set of document requests, making Ms. Doe's responses due well after the then-existing discovery cutoff. (*Id.*) LCG's requests were for Ms. Doe's communications with, among others, Ms. Lammert, Silva, Mr. Jacoby, and Ms. Richard, who were all identified either in Plaintiff's Complaint or her Rule 26(a) Disclosures. (*Id.* at 9.) Defendants had every opportunity to request these communications from Ms. Doe and third parties prior to deposing Plaintiff, but they did not. After this Court extended the discovery deadline, Ms. Doe produced 10 pages of documents in response to LCG's requests including, as made plain by the documents themselves and Plaintiff's written responses, a message sent by Mr. Jacoby (PL-000133); Mr. Jacoby's written communication to Ms. Doe requesting her availability for a phone call (PL-000134); and messaging and communications from the Silva survivors' Facebook group chat "regarding the sexual assault forming the basis of this lawsuit and/or Lafayette Consolidated Government or Lafayette Police Department" (PL-000135-43). Defendants have already extensively deposed Ms. Doe on her communications with Mr. Jacoby and group chat communications and messaging, and they deposed Ms. Richard on those same topics. (Ex. 1 (Doe Dep.) at 91-99, 308-313, 324-25.) These documents are consistent with the deposition testimony of Ms. Doe and Ms. Richard, and the Declaration of Mr. Jacoby. Moreover, a second deposition of Plaintiff on these documents should be denied because it will not resolve any issues in this case, and the burden, expense, and oppression of a second deposition outweighs any benefit. *See* Fed. R. Civ. P. 26(b)(1).

## CONCLUSION

For all the reasons set forth above, Plaintiff respectfully requests that this Court DENY

Defendant ULS's Motion in its entirety.


Dated:  January 5, 2024                                   Respectfully submitted,

/s/ Monica H. Beck                                        /s/ J. Lane Ewing, Jr.
**THE FIERBERG NATIONAL**                                 **CAZAYOUX EWING LAW FIRM**
**LAW GROUP, PLLC**                                       Donald J. Cazayoux, Jr. (LBN 20742)
Monica H. Beck*                                           J. Lane Ewing, Jr. (LBN 29854)
Bailor Bell*                                              257 Maximilian Street
201 E. 17th Street, Suite A                               Baton Rouge, LA  70802
Traverse City, MI  49684                                  Telephone: (225) 650-7400
Telephone: (231) 933-0180                                 Facsimile: (225) 650-7401
Facsimile: (231) 252-8100                                 Email: don@cazayouxewing.com
Email: mbeck@tfnlgroup.com                                Email: lane@cazayouxewing.com
Email: bbell@tfnlgroup.com
*Admitted pro hac vice*

*Attorneys for Plaintiff Jane Doe*


## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2024, a copy of the foregoing was filed with the Clerk of
Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by
operation of the court's electronic filing system.

/s/ Monica H. Beck