UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JANE DOE                                                          CIVIL ACTION

VERSUS

BOARD OF SUPERVISORS OF THE                        NO. 22-00338-BAJ-SDJ
UNIVERSITY OF LOUISIANA SYSTEM,
ET AL.

RULING AND ORDER

Now before the Court is Defendant Board of Supervisors of the Louisiana System's ("ULS") **Motion *In Limine* and *Daubert* Motion To Exclude Or Limit Testimony of Plaintiff's Witness Billie-Jo Grant (Doc. 157, the "Motion")**. The Motion is opposed. (Doc. 173). ULS filed a Reply Brief. (Doc. 186). For the reasons below, ULS's Motion will be **GRANTED IN PART** and **DENIED IN PART**.

I. BACKGROUND

The alleged facts of this case have been detailed by the Court at length in its previous Ruling. (Doc. 52). ULS brings this Motion to preclude Plaintiff's expert Billie-Jo Grant from testifying. (Doc. 157).

II. LEGAL STANDARDS

A. Motion in Limine

"It is well settled that motions in limine are disfavored." *Auenson v. Lewis*, 1996 WL 457258, at *1 (E.D. La. Aug. 12, 1996) (citing *Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)). "Motions in limine are frequently made in the abstract and in anticipation of some hypothetical

circumstance that may not develop at trial." *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980) (superseded on other grounds). "An order in limine excludes only clearly inadmissible evidence; therefore, evidence should not be excluded before trial unless it is clearly inadmissible on *all* potential grounds." *Rivera v. Robinson*, 464 F. Supp. 3d 847, 853 (E.D. La. 2020) (quoting *Auenson*, 1996 WL 457258, at *1) (emphasis added). Instead, courts should reserve evidentiary rulings until trial so that questions as to the evidence "may be resolved in the proper context." *Auenson*, 1996 WL 457258, at *1.

However, "[d]enial of a motion in limine does not mean all evidence contemplated by the motion will be automatically admitted. Rather, denial means that the court cannot determine in advance whether the evidence should be excluded." *Id.*

Federal Rule of Evidence 401 instructs that evidence is relevant if (1) "it has any tendency to make a fact more or less probably than it would be without the evidence" and (2) "the fact is of consequence in determining the action," while Federal Rule of Evidence 402 states that, as a general matter, relevant evidence is admissible. Meanwhile, Federal Rule of Evidence 403 provides courts with the ability to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

"As is commonly understood, motions in limine serve the purpose of addressing threshold evidentiary concerns." *Painter v. Suire*, No. 12-CV-00511-SDD-SCR,

2014 WL 4925522, at *1 (M.D. La. Sept. 30, 2014), *aff'd in part*, 650 F. App'x 219 (5th Cir. 2016). "Motions *in limine* cannot be a substitute for a motion for summary judgment, a motion to dismiss, or a motion for directed verdict." *Morgan v. Mississippi*, No. CIV.A.2:07-CV-15-MTP, 2009 WL 3259233, at *1 (S.D. Miss. Oct. 8, 2009) (first citing 21 Charles Alan Wright & Kenneth W. Graham, Jr., *Fed. Prac. & Proc* § 5037.18 (2d ed. West 2009) (stating "the preexisting caselaw provides ammunition against those who would use the motion in limine as a substitute for a motion for summary judgment or other peremptory ruling in civil cases"); then citing 75 Am.Jur.2d *Trial* § 44 (West 2009) (stating that the "use of motions in limine to summarily dismiss a portion of a claim has been condemned, and the trial courts are cautioned not to allow motions in limine to be used as. . . motions for summary judgment or motions to dismiss. . . [or] to perform the function of a directed verdict"); then citing *In re Katrina Canal Breaches Consolidated Litigation*, No. 05–4182, 2009 WL 982104, at *5 (E.D. La. Apr 13, 2009) (finding that the use of a motion *in limine* was prohibited where "the very basis for the motion in limine require[d] a finding with regard to causation which would have to be the subject of a motion for summary judgment")). Put differently, motions in limine are inappropriate vehicles for adjudication of substantive issues. *Williams v. Rushmore Loan Mgmt. Servs. LLC*, No. 3:15CV673(RNC), 2017 WL 822793, at *1 (D. Conn. Mar. 2, 2017) (collecting cases).

**B. *Daubert* Motion**

Federal Rule of Evidence 702 provides that a witness may be qualified as an expert by knowledge, skill, experience, training, or education, and that this expert may testify in the form of an opinion or otherwise if it is demonstrated that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based." *Fayard v. Tire Kingdom, Inc.*, No. CIV.A. 09-171-BAJ, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010). The Court has broad discretion in deciding whether to admit expert opinion testimony. *See Lamar Advert. Co. v. Zurich Am. Ins. Co.*, 533 F. Supp. 3d 332, 340 (M.D. La. 2021) (collecting cases).

"[T]he rejection of expert testimony is the exception and not the rule." *Barnett v. Nat'l Cont'l Ins. Co.*, No. 3:17-CV-153-JWD-EWD, 2019 WL 126732, at *3 (M.D. La. Jan. 8, 2019) (quoting *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011)). "Experts should be excluded only if their testimony is so fundamentally unsupported that it cannot possibly help the factfinder."

4

*Gen. Elec. Cap. Bus. Asset Funding Corp. v. S.A.S.E. Mil. Ltd.*, No. CIV. SA-03-CA-189-RF, 2004 WL 5495590, at *5 (W.D. Tex. Oct. 21, 2004) (citing *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). Further, "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002).

### III. DISCUSSION

ULS asks the Court to prevent Grant from testifying because Plaintiff failed to comply with the disclosure requirements under Federal Rule of Civil Procedure ("Rule") 26 and because ULS takes issue with Grant's qualifications. The Court declines to exclude Grant's testimony, but will partially limit her testimony in the manner set forth below.

#### A. Motion in Limine

ULS contends that Grant's testimony should be excluded because although she timely submitted her expert disclosures, her disclosures did not contain a "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." (Doc. 157-1 at 5). Exclusion of testimony for a violation of Rule 26 may be justified by four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Texas A&M Rsch. Found. v. Magna Transp., Inc.*,

338 F.3d 394, 402 (5th Cir. 2003). Here, the offered evidence is important to Plaintiff's case, as Grant is her sole expert on applicable standards of care, and the prejudice to ULS is negligible given that Grant was otherwise timely and properly designated as an expert and given that the requested list of matters was provided a full year before the scheduled trial date. *See id.* at 402 ("Further, any prejudice was cured by the approximately one month during with [defendant] was allowed to examine and respond to the contested evidence."). Further, this negligible prejudice can be cured by allowing Grant's deposition to be reopened on a limited basis on ULS's motion. The Court will not exclude Grant's testimony on this basis.

## B. *Daubert* Motion

ULS argues that Grant's proposed expert evidence does not meet the standards set forth in Federal Rule of Evidence 702 as applied by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 506 U.S. 579, 590 (1993). ULS challenges Grant's qualifications, opinions, and methodology.

ULS contends that Grant has not previously testified as an expert in the field of higher education and has only been qualified as an expert in cases involving K-12 education or youth-serving organizations. (Doc. 157-1 at 8). ULS maintains that Grant has never:

- Drafted or developed policies for colleges or universities;
- Drafted or reviewed faculty handbooks or employee manuals for a college or university;
- Drafted Student Codes of Conduct for an institution of higher education;
- Drafted a student handbook for a college or university;

6

- Served as a Title IX coordinator for a college or university;

- Served as a director of Title IX compliance for a college or university;
- Written a book on Title IX compliance related to higher education;

- Been retained by a college or university to consult and assess their Title IX work;

- Provided trainings to students in higher education;

- Drafted memoranda of understanding;

- Conducted an investigation into sexual harassment for a college or university;

- Used the Maxient or eyesight programs commonly used in higher education for tracking sexual assault complaints;

- Consulted with higher education on record-keeping from 2014-2017; or

- Served as a decision maker in higher education.

(*Id.*). In addition to these assertions, and as further evidence of Grant's purported lack of credentials, ULS emphasizes that Grant opined that there was no difference under Title IX between higher education and K-12 education. (*Id.* at 9).

ULS also argues that Grant offers legal conclusions that must be excluded. The legal conclusions Grant allegedly offers and ULS's arguments against those conclusions are set forth in ULS's brief as follows:

- ULS, ULL and Tech failed in their procedures, training, investigation and recordkeeping. *Douglas v. Chem Carriers Towing, LLC*, 431 F.Supp.3d 830, 836 (E.D. La. Aug. 23, 2019) (finding opinions of violations of "federal law, safety and industry standards" impermissible) (citing *Shawler v. Ergon Asphalt & Emulsions, Inc.*, No. 15-2599, 2016 WL 1019121, at *4 (E.D. La. Mar. 15, 2016) ("[W]hich rules or regulations apply is a legal issue to be decided by the Court. Expert testimony purporting to establish which rules or

7

regulations actually applied to the incident in this case is inappropriate.")).

- ULS, ULL and Tech departed from the standards of care in Louisiana, without citing to the specific "standards" that the "expert" opined were breached. *Id.*

- "ULS, ULL and Tech failed to comply with and disregarded their responsibilities under federal regulations, state requirements, administrative requirements, and their own policies." *Id.*

- "ULS, ULL and Tech fell below the standard of care in failing to provide proper policies and procedures, failing to properly train staff, administrators and students, failing to properly investigate concerns and complaints regarding Silva, failing to take corrective action to prevent reoccurrence of Silva's sexual harassment, failing to keep proper records, and failing to communicate information about Silva, a student who was a danger to others." "ULS failed to comply with federal regulations, state laws, and the Board of Regents policy requirements." *Id.*

- "Tech was out of compliance with Title IX, its own policies, and the Board of Regents Uniform Policy on Sexual Misconduct and failed to take steps [to] intervene, remedy the hostile education environment, and protect the students from further harm and retaliation." *Id.*

- "Tech failed to support Jane Doe and remedy the school environment." Specifically, Grant lists remedial actions like "alternative placements" that should have been taken – there is no greater "alternative placement" than the alleged perpetrator moving out of town. *Douglas*, 431 F.Supp.3d at 835-36 ("Expert testimony [is] unnecessary" when the jury can "assess the[e] situation using only their common experience and knowledge.")(citing *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990)).

- A failure to have sufficient policies and procedures is a deviation from the standard of care. ULL has provided its policies of sexual harassment effective as early as 2015, and Tech provided its policy for 2018. If Plaintiff intentionally withheld these documents from Grant or Grant ignored them, this should not be allowed to prejudice ULS.

- ULL "failed to place a hold on Silva's transcript, allowing him to transfer and continue a pattern of assaults on students." Silva was

8

> disciplined in June 2015 for an arrest that occurred in Baton Rouge. The inter-campus transfer policy did not go into effect until August 2015. When Silva sought to transfer to Tech, this policy did not apply. Grant's reckless legal opinions based on faulty grounds are unreliable.

(*Id.* at 10–11).

ULS further seeks to exclude Grant's testimony that ULS was required to conduct a thorough investigation when it received notice that Silva had been arrested for rape. (*Id.* at 12). ULS argues that this opinion has no basis. (*Id.*).

In response, Plaintiff opposes ULS's challenge to Grant's qualifications and emphasizes Grant's relevant experience and education in the field of Title IX education. (Doc. 173 at 6–7). In her view, the arguments raised by ULS are issues that go to the weight, as opposed to the admissibility, of Grant's intended testimony. Plaintiff also contends that Grant's opinions regarding ULS's standard of care or ULS's departures therefrom are not legal conclusions. (*Id.* at 7).

The Court will address ULS's challenges to Grant's qualifications, opinions, methodology, and other miscellaneous challenges, in turn.

### i. Billie-Jo Grant's Qualifications

Grant's testimony will not be excluded on account of her qualifications. ULS argues that Grant's testimony should be excluded because she does not possess experience within higher education settings, and thus cannot knowledgeably opine on the applicable standards of care. (Doc. 157-1 at 8). Amongst other qualifications, Grant: (1) holds a M.Ed. in Social Foundations of Education and a Ph.D. in Educational Research, Statistics, and Evaluation from the University of Virginia; (2) has personal experience in higher education settings through her role as an

9

adjunct professor at California Polytechnic State University; and (3) has provided training to hundreds of educational organizations, including colleges and universities, on "awareness and investigation training on sexual harassment, sexual misconduct, discrimination, bullying, and Title IX compliance." (Docs. 157-3 at 1, 173 at 6). From 2016 to 2017, Grant was the "Principal Investigator for [a] Federal Department of Justice School Safety study titled, 'Sexual Misconduct by School Employees: Policy Implementation and Effectiveness.'" This study was conducted by "analyzing relevant federal regulations, state laws, and local policies to determine the standard of care." (*Id.* at 2). Grant thus possesses relevant education, skills, knowledge, and professional history to the topics on which she is offered as an expert.

For these reasons, along with the qualifications referenced in Grant's expert report (Doc. 157-3) and her curriculum vitae (Doc. 157-4), the Court determines that she is qualified to offer expert testimony as to ULS's standard of care. These materials provide a "reasonable indication of qualifications," *Urda v. Valmont Indus., Inc.*, 561 F. Supp. 3d 632, 638 (M.D. La. 2021), at the very least, and ULS's contentions regarding her lack of certain specific experiences, or the bases for her opinions (Doc. 157-1 at 9) go to the weight, as opposed to the admissibility, of her testimony. *See Lamar Advert. Co. v. Zurich Am. Ins. Co.*, 533 F. Supp. 3d 332, 344 (M.D. La. 2021) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." (citation omitted)); *see also Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016)

10

("Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." (citation omitted)).

### ii. Billie-Jo Grant's Opinions

ULS also seeks to exclude certain opinions as legal conclusions. As a general matter, "an expert may never render conclusions of law." *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009). However, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *Id.* While "an expert cannot offer an opinion that [a] defendant violated a statute," "expert or fact testimony on industry practices or standards. . . is often relevant and admissible." *Roohbakhsh v. Bd. of Trustees of Nebraska State Colleges*, No. 8:17CV31, 2019 WL 5653448, at *2 (D. Neb. Oct. 31, 2019) (citing *Frye v. Hamilton Cty. Hosp.*, No. 18-CV-3031-CJW-MAR, 2019 WL 2404330, at *4 (N.D. Iowa June 7, 2019)). In the Title IX context, experts have been prevented from testifying on the legal requirements of Title IX and whether a university violated Title IX; but have been allowed to testify regarding industry standards for Title IX training, compliance, and investigations, along with how schools may effectively approach Title IX discrimination. *McGowan v. S. Methodist Univ.*, No. 3:18-CV-00141-N, 2024 WL 946954, at *5 (N.D. Tex. Mar. 4, 2024) (first citing *Roohbakhsh*, 2019 WL 5653448, at *2; then citing *Doe v. Wharton Indep. Sch. Dist.*, 2017 WL 932935, at *2 (S.D. Tex. 2017)).

ULS provides a laundry list of purported legal conclusions made by Grant in

her expert report. (Doc. 157-1 at 10–11). Certain challenges, such as ULS's challenge to Grant's opinion that "ULS failed to comply with federal regulations, state laws, and the Board of Regents policy requirements," (Doc. 157-3 at 34), are well founded. Other challenges, such as ULS's challenge to Grant's opinion that ULS, ULL, and Tech departed from applicable standards of care, are not.[1]

Accordingly, the Court will **GRANT** ULS's Motion to the extent Grant seeks to testify regarding any subject other than that which she is offered as an expert for—the applicable standards of care and any departures therefrom. Grant will not be permitted to testify regarding violations of legal requirements, or any issues of causation.

### iii. Billie-Jo Grant's Methodology

ULS also challenges Grant's proposed testimony regarding a thorough investigation requirement. Grant cites to at least one authority as a basis for her opinion. (*See* Doc. 157-3 at 11). ULS naturally disagrees with the conclusions that Grant reaches, and each construe the cited authority differently.

The Office for Civil Rights ("OCR") Title IX Guidance for 2001 is this contested authority, and Grant seemingly does not believe a formal complaint or requested action is necessary to trigger the school's obligation to conduct a thorough investigation, while ULS does. (*Compare* Doc. 157-3 at 11, 25 *with* Doc. 157-1 at 12). Based on the materials provided to the Court, both readings of the applicable

---

[1] ULS challenges the basis for Grant's conclusion, arguing that she did not "cit[e] to the specific 'standards'" that were purportedly breached (Doc. 157-1 at 10), but ignores that Grant dedicates many of the previous thirty pages in her expert report to this exact question. (*See* Doc. 157-3)

12

guidance are tenable, depending on how one interprets the introductory clause of the sentence. The contested guidance states that:

> Regardless of whether the student who was harassed, or his or her parent, decides to file a formal complaint or otherwise request action on the student's behalf (including in cases involving direct observation by a responsible employee), the school must promptly investigate to determine what occurred and then take appropriate steps to resolve the situation. The inquiry must be prompt, thorough, and impartial.

(Doc. 157-3 at 11). ULS believes the "regardless" clause refers to the identity of the person who files a formal complaint or otherwise requests action on a student's behalf. (Doc. 157-1 at 12). Grant apparently believes that the term "regardless" applies to the entirety of the introductory clause, up to the phrase "the school must promptly," and treats the "or his or her parent" clause as an interjection that does not cabin the reach of "regardless," such that the guidance instructs for thorough investigations to occur regardless of whether formal complaints are lodged or requests for action are made. (*See* Doc. 157-3 at 23 (opining that "all concerns and complaints should be investigated promptly and thoroughly by a trained investigator.")).

The Court takes no position on the soundness of either party's opinion, but nonetheless concludes that Grant's specific conclusion as to the thorough investigation requirement is not based on pure conjecture. ULS has furnished its own expert, Jodi Shipper, who intends to contest Grant's conclusion that a thorough investigation is within the standard applicable standard of care, and the Court will not resolve what appears to be a factual dispute between two experts on a *Daubert* motion. ULS's arguments go to the weight, not admissibility, of Grant's testimony,

13

and are best tested at trial by vigorous cross examination. *See Urda*, 561 F. Supp. 3d at 640. For present purposes, the Court denies ULS's Motion to exclude this proposed testimony.

### iv. Miscellaneous Challenges

The remaining challenges to Grant's expert testimony are based on her supposed factual missteps and arguments from ULS's other motions in limine.[2] (*See* Docs. 154, 155, 157-1 at 21, 23). The Court will rule on those repetitive arguments separately, and again reminds the parties that motions in limine should not be used to resolve factual disputes. *See Luv n' care v. Laurain*, No. CV 3:16-00777, 2021 WL 3440623, at *1 (W.D. La. Aug. 5, 2021). The Court denies ULS's remaining challenges to Grant's testimony at this time.[3] To the extent Grant herself has withdrawn certain conclusions from her expert report due to misapplication of the facts (*see* Doc. 157-1 at 24–25), the Court trusts that Grant will not offer such testimony at trial, and will strike such testimony in the event she does so.

---

[2] ULS potentially raised another argument concerning the foundation or methodology of Grant's conclusions, stating that Grant did not adequately connect her facts to Doe. (Doc. 157-1 at 16). ULS points to Grant's discussion of LSU's disciplinary reports, training of ULL and Tech personnel, and documentation and record keeping as proof. (*Id.*). The Court finds the argument as presented to be in equal parts underdeveloped and unavailing. Each of the identified portions of Grant's testimony has obvious bearing on and connection to Plaintiff's claims and to the alleged circumstances that underpin her Complaint, and are explained in greater detail in the remainder of her expert report. (*See* Doc. 157-3).

[3] ULS also contests Grant's statement that "Tapo [ULL Assistant Dean of Students and later Associate Dean of Students and Interim Director of Student Life and Conduct] did not ask Gregory [LSU Associate Dean] for any other information, including whether Silva had any other criminal or disciplinary history at LSU." (Doc. 157-1 at 20). ULS argues that this uncontested fact would be misleading to the jury because Grant testified that requesting Silva's entire disciplinary file from LSU was not required. The Court disagrees. In proper context, Grant testified that requesting the entire file is not a requirement, but that a reasonable and thorough investigation would involve some follow-up. (Doc. 157-6 at 27–28).

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that ULS's **Motion (Doc. 157)** be and is hereby **GRANTED IN PART** and **DENIED IN PART.** Grant's testimony will not be entirely excluded, and will be limited as provided above.

Baton Rouge, Louisiana, this 26th day of March, 2025

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

15