UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JANE DOE                                                    CIVIL ACTION

VERSUS

BOARD OF SUPERVISORS OF THE                NO. 22-00338-BAJ-SDJ
UNIVERSITY    OF    LOUISIANA
SYSTEM, ET AL.

<u>RULING AND ORDER</u>

Before the Court is Defendant Lafayette City-Parish Consolidated Government's ("LCG") **Motion for Summary Judgment (Doc. 199).** Plaintiff opposes the Motion. (Doc. 206). LCG filed a Reply Brief. (Doc. 217). For the reasons that follow, the Motion will be **GRANTED.**

## I.    BACKGROUND

The following facts are uncontested for present purposes, either because the opposing party has admitted the fact or because the opposing party failed to adequately contest it:[1]

### A. **Lafayette Parish Sexual Assault Response Team Memorandum of Agreement.**

On March 14, 2014, the Lafayette Police Department signed a Memorandum of Agreement titled "Lafayette Parish Sexual Assault Response Team (SART)" ("Sexual Assault Response MOA") (Doc. 199-5). Lafayette Parish created the Sexual

---

[1] The Court detailed the lengthy facts of this case in its prior Ruling. (Doc. 313). Here, the Court describes only the facts directly relevant to the arguments raised in LCG's Motion. (Doc. 199).

Assault Response Team to "improve collaborative efforts in the local community response to sexual assault." (Doc. 199-5 at 1).

The Sexual Assault Response MOA provides: "This working agreement is recognized as a cooperative, collaborative commitment between each agency listed below, and proof of commitment is acknowledged by the signature of each agency's representative." (Doc. 199-5 at 1). The signatories to the Sexual Assault Response MOA included the following entities: (1) the Acadiana Crime Lab; (2) the Lafayette Police Department; (3) the Broussard Police Department; (4) Hearts of Hope; (5) 15th Judicial District; (6) Faith House; (7) Lafayette Parish Sheriff's Office; (8) Lafayette Parish Correctional Center; and (8) University of Louisiana Lafayette ("ULL"). (Doc. 199-5).

B. **The Campus Accountability and Safety Act Memorandum of Understanding.**

On January 17, 2017, the Lafayette Police Department signed the Campus and Accountability and Safety Act Memorandum of Understanding ("Campus Safety MOU"). (Doc. 199-2 ¶ 2; Doc. 206. ¶ 2). Under the heading "Purpose," the Campus Safety MOU states:

> The Campus Accountability and Safety Act, La. R.S. 17:3399.11. provides that all public institutions of higher education shall enter into a memorandum of agreement with local law enforcement and criminal justice agencies to clearly delineate the responsibilities and share information, in accordance with applicable state and federal confidentiality laws, regarding sexually-oriented criminal offenses, including trends about sexually-oriented criminal offenses against students of the institution.

> This Memorandum of Understanding ("MOU") is entered into by and among the Parties for the purpose of delineating responsibilities and

sharing information specific to such offenses including University of Louisiana at Lafayette students as required by the [Campus Accountability and Safety] Act. This MOU is intended to memorialize the Parties' commitment to continued cooperation in the prevention of and response to such criminal offenses involving members of the University of Louisiana at Lafayette and Lafayette Parish community.

(Doc. 199-6).

In the Campus Safety MOU, the Lafayette Police Department agreed to "[n]otify UL[L]'s Title IX Coordinator, to the extent we are able with respect to any confidentiality requirements, of any report of a sexually oriented criminal offense that may have occurred on its campus or involved a student as a victim or an accused." (Doc. 199-2 ¶ 4; Doc. 206 ¶ 4). In the same MOU, ULL agreed to "maintain communication and contact with ULPD [ULL Police Department] and law enforcement agencies." (Doc. 199-2 ¶ 5; Doc. 206 ¶ 5).

Although the Campus Safety MOU provided that reports of sexually oriented criminal conduct were to be shared with the ULL Title IX Coordinator, investigations of sexual assault or sexual harassment at ULL would have been taken up by the department of Student Rights and Responsibilities rather than Title IX before 2021. (Doc. 199-2 ¶ 13; Doc. 206 ¶ 13). Teressa LeDay became the ULL Title IX Coordinator on August 7, 2018. At no point was LeDay designated as liaison or assigned any responsibilities relating to the Campus Safety MOU. (Doc. 199-2 ¶ 16; Doc. 206 ¶ 16).

C. **Silva.**

After the Lafayette Police Department agreed to the Campus Safety MOU, two reports were made against Silva. (Doc. 199-2 ¶ 6; Doc. 206 ¶ 6).

## II.     PROCEDURAL HISTORY

Plaintiff filed suit on May 25, 2022. (Doc. 1). She asserts one claim against LCG: Count IV, negligence under Louisiana state law. (Doc. 1 at ¶¶ 162–170).

Plaintiff alleges that LCG owed a duty to Plaintiff and other students to report students who were accused of criminal sexual assault to ULL in a reasonably prudent manner to protect students from sexual assault. (*Id.* at ¶ 163). Plaintiff contends that by entering into the Campus Safety MOU, LCG voluntarily assumed the duty to share reports with ULL's Title IX Coordinator that students like Silva were accused of committing a sexually oriented criminal offense. (*Id.* 1 at ¶ 164). Plaintiff alleges that LCG owed a duty to exercise reasonable care in carrying out these responsibilities, and that ULL relied on LCG to exercise reasonable care in executing its responsibilities under the Campus Safety MOU. (*Id.* at ¶¶ 165–166).

Plaintiff alleges that LCG was negligent by:

a. Failing to inform UL Lafayette of three reports that Silva engaged in criminal sexual activities against female students (Students 3, 4, and 5);

b. Failing to comply with the Executive Order and Act 172;

c. Violating its Memorandum of Understanding with UL Lafayette by not reporting allegations of Silva's criminal misconduct to the university;

d. Failing to take reasonable care to undertake its responsibilities under the Memorandum of Understanding; and

e. Failing to take meaningful measures to prevent Silva from sexually assaulting other female students.

(*Id.* at ¶ 167).

Plaintiff further alleges that it was entirely foreseeable that LCG's breaches

would result in Silva's sexual assault of yet another female student—Plaintiff. (*Id.* at ¶ 168). Finally, Plaintiff contends that as a direct and proximate result of LCG's negligent actions and inaction, Ms. Doe was raped by Silva and endured great physical, emotional, and mental suffering, for which she is entitled to be compensated. (*Id.* at ¶ 170).

LCG previously moved to dismiss, asserting, in part, that Plaintiff's claim against it was time-barred. (Doc. 22). The Court denied LCG's Motion, finding in relevant part that "Plaintiff's Complaint establishes a plausible basis for tolling under the *contra non valent[e]m* discovery rule, until she read the USA Today article and learned that Silva was previously a UL Lafayette student, where he was reported to LPD *three* times for sexual assault." (Doc. 52).

LCG now moves for summary judgment, asserting that discovery has borne out that Plaintiff's negligence claim against it is time-barred. (Doc. 199). LCG argues that if the Court finds that Plaintiff's claim is not time-barred, Plaintiff's negligence claim still fails as a matter of law. (*Id.*). For the following reasons, LCG's Motion will be **GRANTED.**

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 56(a) provides that the Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. All justifiable inferences to be drawn from the underlying facts

5

must be viewed in the light most favorable to the party opposing the motion. If the record, viewed in this light, could not lead a rational trier of fact to find for the nonmovant, summary judgment is proper. On the other hand, if the factfinder could reasonably find in the nonmovant's favor, then summary judgment is improper.

Finally, even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that a better course would be to proceed to a full trial.

*Kunin v. Feofanov*, 69 F.3d 59, 61–62 (5th Cir. 1995) (quotation marks, alterations, and citations omitted); *see also Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (same); *accord Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994) ("The Supreme Court has recognized that, even in the absence of a factual dispute, a district court has the power to 'deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Importantly, when conducting the summary judgment analysis, the Court is prohibited from evaluating the credibility of the witnesses, weighing the evidence, or resolving factual disputes. *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021). Put differently, the Court may *not* credit certain witness testimony over other evidence: "By choosing which testimony to credit and which to discard, a court improperly weighs the evidence and resolves disputed issues in favor of the moving party. Doing so is tantamount to making a credibility determination, and—at this summary judgment stage—a court may make no credibility determinations." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016) (quotation marks, alterations, and citations omitted).

## IV.    ANALYSIS

LCG argues that Plaintiff's negligence claim is prescribed, and if not, Plaintiff's claim still fails as a matter of law because LCG did not owe Plaintiff a duty, an essential element of her negligence claim. (Doc. 199). The Court has already analyzed the issue of prescription at length and need not do so again here. (Doc. 313). Thus, the Court turns to whether LCG owed Plaintiff a duty.

LCG argues that neither the Campus Safety MOU nor the Campus Accountability and Safety Act created a specialized duty between LCG and Plaintiff. (Doc. 199-1 at 48). Plaintiff responds with a two-paragraph Opposition brief, arguing that the Campus Safety MOU was intended for the benefit of third-party students like Plaintiff, forming a "stipulation *pour autrui*" between Plaintiff and LCG. (Doc. 206 at 2).

Relevant to this issue, the Court emphasized the following at the Motion to Dismiss phase:

> The parties have not briefed whether the Lafayette MOU created a *stipulation pour autrui* in Plaintiff's favor, and the Court does not decide that issue here. Certainly, the standard for a *stipulation pour autroi* is high. *See Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1147 (5th Cir. 1993). Nonetheless, the Louisiana Supreme Court has long-recognized *stipulations pour autroi* "in favor of the general public," *Oliff v. City of Shreveport, 52 La.Ann. 1203, 27* So. 688, 697 (La. 1900); *Lawson v. Shreveport Waterworks Co.*, 111 La. 73, 35 So. 390, 392 (1903), and the fact that Plaintiff may yet prove a *stipulation pour autroi* under the Lafayette MOU reinforces the Court's determination that Plaintiff has plausibly alleged that LPD owed a duty to share reports of Silva's sexual assaults with UL Lafayette.

*Doe v. Bd. of Supervisors of Univ. of La. Sys.*, 650 F. Supp. 3d 452, 480 (M.D. La. 2023). Now that the issue is properly before the Court, the Court will

address whether the Campus Safety MOU is a stipulation *pour autrui* in favor of Plaintiff.

Because Plaintiff's negligence claim arises out of state law, the Court applies the substantive law of the forum state. *First Colony Life Ins. Co. v. Sanford,* 555 F.3d 177, 181 (5th Cir. 2009) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78–79 (1938)). "To determine Louisiana law, [the United States Court of Appeals for the Fifth Circuit] look[s] to the final decisions of the Louisiana Supreme Court." *Bradley v. Allstate Ins. Co.,* 620 F.3d 509, 516 n. 2 (5th Cir. 2010) (internal citations omitted); *see also Price v. Hous. Auth. of New Orleans,* 453 F. App'x 446, 450 n.4 (5th Cir. 2011).

Under Louisiana law, a contract that designates a benefit for a third party is called a stipulation *pour autrui*. La. Civ. Code art. 1978. Louisiana Civil Code article 1978 provides:

> A contracting party may stipulate a benefit for a third person called a third party beneficiary.
>
> Once the third party has manifested his intention to avail himself of the benefit, the parties may not dissolve the contract by mutual consent without the beneficiary's agreement.

La. Civ. Code art. 1978.

The Louisiana Supreme Court has identified three criteria for determining whether contracting parties have provided a benefit for a third party: (1) the stipulation for a third party is "manifestly clear," (2) there must be "certainty as to the benefit provided the third party," and (3) the benefit must not be "a mere incident of the contract between the promisor and the promisee." *Joseph v.*

8

*Hosp. Serv. Dist. No. 2 of Par. of St. Mary*, 2005-2364 (La. 10/15/06), 939 So. 2d 1206, 1212; *see also Butler v. Am. Sec. Ins. Co.*, No. CV 18-871-BAJ-EWD, 2019 WL 1714231, at *2 (M.D. La. Apr. 17, 2019) (Jackson, J.) (relying on these criteria to determine whether a contract created a stipulation *pour autrui* in plaintiffs' favor). The Fifth Circuit, applying Louisiana law, has relied on the same three criteria. *Williams v. Integon Nat'l Ins. Co.*, 132 F.4th 801, 805–06 (5th Cir. 2025).

According to the Louisiana Supreme Court, "[e]ach contract must be evaluated on its own terms and conditions" and "[t]he party claiming the benefit bears the burden of proof." *Williams*, 132 F.4th at 806 (citing *Joseph*, 939 So. 2d at 1212). "A stipulation *pour autrui* is never presumed." *Id.* Thus, Plaintiff bears the burden of proving a stipulation *pour autrui* here. The Court turns to each of the three criteria necessary to establish a stipulation *pour autrui* under Louisiana law.

First, "[t]he most basic requirement of a stipulation *pour autrui* is that the contract manifest a clear intention to benefit the third party." *Williams*, 132 F.4th at 806 (citing *Lee v. Safeco Ins. Co. of Am.*, No. 08-1100, 2008 WL 2622997, at *4 (E.D. La. July 2, 2008); *Joseph*, 939 So. 2d at 1212). The Court has held that "absent such a clear manifestation, a party claiming to be a third[-]party beneficiary cannot meet [her] burden of proof." *Cedar Lodge Plantation, LLC v. CSHV Fairway View I, LLC*, No. CV 13-00129-BAJ-EWD, 2016 WL 7411131, at *6 n.6 (M.D. La. Dec. 21, 2016), *aff'd sub nom. Cedar Lodge Plantation, L.L.C. v.*

*CSHV Fairway View I, L.L.C.*, 753 F. App'x 191 (5th Cir. 2018) (Jackson, J.) (citing *Joseph*, 939 So. 2d at 1212).

The Court turns to the terms of the Campus Safety MOU to determine whether it manifested a clear intention to benefit Plaintiff, the purported third-party beneficiary. Although Plaintiff bears the burden of proof, the only argument Plaintiff makes to satisfy her burden is as follows: "It is clear the MOU between ULL and LPD was for the benefit of third-party students like Ms. Doe." (Doc. 206 at 2).

LCG responds that it is far from clear, much less manifestly clear, that Plaintiff, a Tech student, was an intended third-party beneficiary to the Campus Safety MOU. (Doc. 217 at 5). LCG points to the "Collaborative Efforts" Section of the Campus Safety MOU, which states that the MOU is intended to "supplement and enhance cooperation between UL Lafayette and the Lafayette Parish criminal justice and law enforcement agencies involving *UL Lafayette students* consistent with the Campus Accountability and Safety Act." (Doc. 199-6 at 2 (emphasis added)). LCG argues that although ULL students are highlighted by the Campus Safety MOU, Tech Students like Plaintiff are not mentioned.

Although perhaps Plaintiff could have established that the MOU was intended to benefit students generally, not solely ULL students, Plaintiff has made no effort to do so. (*See* Doc. 206). Without more, the Court finds that Plaintiff has failed to meet her burden of establishing that the Campus Safety MOU manifested a clear intention to benefit Plaintiff, a Tech student.

Second, Plaintiff must show that there is certainty as to the benefit the Campus Safety MOU provided to Plaintiff. *Joseph v. Hosp. Serv. Dist. No. 2 of Par. of St. Mary*, 2005-2364 (La. 10/15/06), 939 So. 2d 1206, 1212. Plaintiff has not offered any argument or evidence to establish this criterion. LCG argues that the Campus Safety MOU was intended to benefit the safety of the local community of Lafayette, to which Plaintiff had no connection as a Tech student in Ruston, Louisiana. Without more from Plaintiff, the Court cannot find that Plaintiff has met her burden to show the requisite certainty.

Finally, Plaintiff must show that the benefit is not a mere incident of the Campus Safety MOU. *Joseph*, 939 So. 2d at 1212. Again, Plaintiff has not offered any argument or evidence in support of this prong of the analysis. LCG again argues that the Campus Safety MOU explicitly states that its purpose is to prevent and respond to criminal offenses involving members of the ULL and Lafayette Parish community, and that Plaintiff has no connection to Lafayette Parish. Without more from Plaintiff, the Court cannot find that Plaintiff has satisfied her burden of establishing the third criterion.

Because Plaintiff's only argument in opposition to LCG's Motion for Summary Judgment is that the Campus Safety MOU created a stipulation *pour autrui* in favor of Plaintiff, the Court must grant LCG's Motion.

## V.    CONCLUSION

Accordingly,

It is ordered that Defendant Lafayette City-Parish Consolidated Government's

**Motion for Summary Judgment (Doc. 199) is GRANTED.** Plaintiff's negligence

claim against LCG is **DISMISSED WITH PREJUDICE.**

Baton Rouge, Louisiana, this __28th__ day of July, 2025

_____

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**